NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

E.G. and J.G. o/b/o S.G.,

                  Plaintiffs,

    v.

LAKELAND REGIONAL HIGH
SCHOOL BOARD OF EDUCATION,

              Defendant.

CIVIL NO. 05-3607 (GEB)

**MEMORANDUM OPINION**

**BROWN, Chief United States District Judge**

This matter comes before the Court upon the motion to dismiss by Defendant Lakeland Regional High School Board of Education (hereinafter "Defendant") [Docket Entry # 11] and upon the cross-motion for summary judgment by Plaintiffs E.G. and J.G. on behalf of S.G. (hereinafter "Plaintiffs")   [Docket Entry # 12].  The Court has jurisdiction over this matter under 20 U.S.C. § 1415(i)(2).  The Court, having read and fully considered all of the parties' submissions, has decided this matter without oral argument pursuant to Fed. R. Civ. P. 78.  For the reasons discussed below, Defendant's motion to dismiss is granted and Plaintiffs' cross-motion for summary judgment is denied.

## I.      BACKGROUND

This case arises under the Individuals with Disabilities Education Act (hereinafter "IDEA"), and raises the issue of whether Defendant Board of Education should be required to reimburse Plaintiffs for the placement of their child, S.G. in private school for the 2001-2002 (Count One of Plaintiffs' Complaint) through 2004-2005 school years (Count Two of Plaintiffs'

Complaint).

Specifically, Plaintiffs' Complaint alleges that Plaintiffs' brought an Administrative Law Action seeking a determination that the placement of S.G. at Barnstable, a private educational institution, was appropriate and that Plaintiffs were entitled to reimbursement.  (Compl., ¶ 7).  On October 29, 2004, the Honorable Mumtaz Bari-Brown, Administrative Law Judge (hereinafter "ALJ"), denied Defendant's motion for summary judgment but ruled that Plaintiffs could not seek reimbursement for the 2001-2002 school year because S.G. was not enrolled in Defendant's district at the time.  (Compl., ¶ 8).  On November 15, 18, 23, 30 and December 6, 2004, a hearing was held before the ALJ.  (Compl., ¶ 11).  On June 10, 2005, the ALJ, in a written opinion, determined that Defendant had provided a sufficient Individualized Education Plan (hereinafter "IEP") that would confer a meaningful educational benefit to S.G.  (ALJ Opinion, p. 18-19) and that Plaintiffs failed to engage in the IEP process in good faith.  (ALJ Opinion, p. 19).  The ALJ ultimately found that Plaintiffs were not entitled to reimbursement of costs associated with S.G.'s placement at Barnstable.  (Compl., ¶ 14).  Plaintiffs assert, in their Complaint, that the findings of the ALJ were incorrect.

## II.     STANDARDS OF REVIEW OF ALJ'S DECISION

### A.     <u>Standard of Review</u>

In a case seeking review of an ALJ's prior decision under the IDEA, the district court applies a "modified version of *de novo* review."  <u>L.E. v. Ramsey Bd. of Educ.</u>, 435 F.3d 384, 389 (3d Cir. 2006).  The district court "must make its own findings by a preponderance of evidence . . . and must also afford 'due weight' to the ALJ's determination."  <u>Shore Reg'l High Sch. Bd. of Educ. v. P.S.</u>, 381 F.3d 194, 198-99 (3d Cir. 2004) (quoting <u>Bd. of Educ. v. Rowley</u>, 458 U.S.

176, 206 (1982)) (citations omitted); see also 20 U.S.C. 1415(i)(2)(C) ("[T]he [district] court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.").  The ALJ's findings of fact from the administrative proceedings are "considered prima facie correct."  Shore Reg'l, 381 F.3d at 199. If the district court disagrees with the ALJ's findings, it must explain why by "point[ing] to contrary nontestimonial extrinsic evidence on the record."  S.H. v. State-Operated Sch. Dist., 336 F.3d 260, 270 (3d Cir. 2003).  However, when the district court hears additional evidence, it is "free to accept or reject the agency findings" based on the "new, expanded record."  Id.  The district court is not to "substitute [its] own notions of sound educational policy for those of the school authorities."  Rowley, 458 U.S. at 206.

### B.    The Individuals with Disabilities Education Act

Under the Act, Congress granted federal funding to the states for state special education programs, contingent on the states providing a "free appropriate public education" to disabled children.  20 U.S.C. § 1400(d)(1)(A).  At the Act's core is the requirement that an IEP be designed for each child.  20 U.S.C. § 1414(d); S.H., 336 F.3d at 264.  The IEP sets forth the goals and objectives which will be used to determine whether the child is receiving a free appropriate public education.  20 U.S.C. § 1414(d); S.H., 336 F.3d at 264.  The IEP is developed by a team composed of the child's parents, the child's regular and special education teachers, a curriculum specialist from the school district, and in addition, if requested by the parents or the school, anyone with special knowledge or expertise related to the child's education.  20 U.S.C. § 1414(d)(1)(B); S.H., 336 F.3d at 265.  The burden of proof in a proceeding to challenge an IEP is

placed upon the party seeking relief.  Ramsey, 435 F.3d at 391-92.

### 1. *Free Appropriate Public Education*

In Rowley, the Supreme Court considered the meaning of the phrase "free appropriate public education."  Rowley, 458 U.S. at 201-03.  It held that a state can satisfy the requirement of a "free appropriate public education" when a state provides "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction."  Id. at 203.  The state must offer access to education that is "meaningful," Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999), but does not need to offer education that "maximize[s] each child's potential," Rowley, 458 U.S. at 198.  The Third Circuit has further interpreted the phrase "free appropriate public education" as "call[ing] for more than a trivial educational benefit" and requiring an IEP to provide "significant learning" and to confer a "meaningful benefit."  Ridgewood, 172 F.3d at 247 (quoting Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 182-84 (3d Cir. 1988)).  The court determines whether the benefit is meaningful in relation to the child's individual potential.  Id.  Thus, if the child "display[s] considerable intellectual potential, [the Act] requires 'a great deal more than a negligible [benefit].'"  Id. (quoting Polk, 853 F.2d at 182).

### III. STANDARDS OF REVIEW FOR MOTIONS TO DISMISS AND SUMMARY JUDGMENTS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the Complaint as true, and viewing them in the light most favorable to Plaintiff, Plaintiff is not entitled to relief.  Oran v. Stafford, 226 F.3d 275, 279 (3d Cir. 2000); Langford v. City of Atl. City, 235 F.3d 845, 850 (3d Cir. 2000); Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).  The Court may not dismiss the Complaint unless Plaintiff can prove no set of facts that would entitle her to relief. Conley v.

Gibson, 355 U.S. 41, 45-46 (1957); Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985), cert. denied, 474 U.S. 935 (1985).

Conversely, where no new evidence has been presented to the Court, motions for summary judgment are the procedural vehicle for asking the judge to decide the case based on the administrative record.  M.A. v. Voorhees Twp. Bd. of Educ., 202 F.Supp.2d 345, 359 (D.N.J. 2002) (quoting Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997)).  Accordingly, in making its determination in this case, the Court has considered the lengthy record, and the volumes of transcripts from the administrative hearings.

**IV.    ANALYSIS**

**A.    Reimbursement by Defendant for the 2001-2002 School Year**

First for this Court's consideration is the parties dispute regarding the financial liability, if any, of the district of Defendant to reimburse for costs incurred by Plaintiffs E.G. and J.G. for placing their child, S.G., in a private school for the 2001-2002 school year.  Plaintiffs argue that the ALJ's prior determination was made "summarily without hearing testimony."  Plaintiffs further argue that because the district "repeatedly denied services" for S.G., Plaintiffs E.G. and J.G. had "no alternative" but to enroll S.G. in a private school.

Defendant counters that it never had the opportunity to propose a program to accommodate S.G.'s needs because Plaintiffs E.G. and J.G. failed to enroll S.G. at Lakeland. Because S.G. was not officially enrolled in the district, Defendant argues, the District was not required to propose or provide a program of accommodation.

The Court will apply *de novo* review to the ALJs interpretation of N.J. Admin. Code § 6A:14-2.10(b), the applicable regulation for the issue at bar.  Under this regulation, certain prerequisites must be fulfilled before an ALJ can require a school district to reimburse parents for

the unilateral placement of their child in private school.  Namely,

> [i]f the parents of a student with a disability, who previously received special education and related services from the district of residence, enroll the student in a nonpublic school, . . . or approved private school for the disabled without the consent of or referral by the district board of education, an [ALJ] may require the district to reimburse the parents for the cost of that enrollment if the [ALJ] finds that the district had not made a free, appropriate public education available to that student in a timely manner prior to that enrollment and that the private placement is appropriate.

N.J. Admin. Code § 6A:14-2.10(b).

Based on the regulation and the facts the parties presented, the ALJ concluded that S.G. was not officially enrolled in the district until May, 2002.  The ALJ further concluded that any discussions between the district and Plaintiffs prior the May, 2002, were "merely preliminary, and d[o] not constitute the official registration or enrollment of the student in the school district." *See* ALJ Decision, Oct. 29, 2004, p. 10.  The Court concurs.  It is simply not feasible to make a district liable for the education of an individual who is not registered or enrolled in said district. Plaintiffs failure to enroll S.G. eliminated any obligation of the district, and necessitated that Plaintiffs E.G. and J.G. pay for the private education they sought for S.G.

Further, even if S.G. had been enrolled in Defendant's district, the above-cited regulation would nevertheless not have been complied with.  Specifically, Plaintiffs E.G. and J.G. enrolled S.G. in Barnstable.  Barnstable is a private education institution which does not provide for evaluation of students who may be in need of special education and related services.  As a result, S.G. was referred to Bergen County Special Services, which ultimately conducted the evaluations of the needs of S.G. to be implemented by Barnstable.  Further, Bergen County Special Services determined that instructional accommodations, supplemental aids and supports, small group testing, and high praise were necessary to accommodate S.G.  However, during the ALJ hearings, inadequacies in Barnstable's program were discovered, such as the learning consultant assigned

to S.G. only visited with S.G. once a week.  *See* ALJ Decision, June 10, 2005, p. 16.  These

deficits hardly present Barnstable as an "appropriate" private institutional placement designed to

assist those with special educational needs.  That conclusion is corroborated by the State of New

Jersey's unwillingness to approve Barnstable as a school for the disabled.

     The Court therefore concludes that the ALJ's determinations regarding the 2001-2002

school year are appropriate.  Defendant's motion to dismiss Count One of Plaintiffs' Complaint

is granted and Plaintiffs' cross-motion for summary judgment on this Count is denied.

### B.     Reimbursement by Defendant for the 2002-2003, 2003-2004 and 2004-2005 School Years

     Second for this Court's consideration is the parties dispute regarding the financial

liability, if any, of the district of Defendant to reimburse for costs incurred by Plaintiffs E.G. and

J.G. for placing their child, S.G., in a private school for the 2002-2003, 2003-2004 and 2004-

2005 school years.

     Plaintiffs argue that the ALJ erred in her Final Decision dated June 10, 2005.  Plaintiffs

argue that the ALJ's determination that Defendant offered S.G. a free and appropriate education

in the least restrictive environment for the above-referenced school years was error.  Defendants

argue in opposition that an appropriate accommodation plan was offered to Plaintiffs, but that

Plaintiffs failed to meaningfully engage in the process of plan development.

     Specifically, the ALJ determined, in an opinion dated June 10, 2005, that Plaintiffs placed

S.G. in Barnstable to protect S.G. from the negative peer attention S.G. was suffering.  The ALJ

further determined that the July 30, 2002 correspondence by Plaintiffs to Defendant was a

explicit rejection of the draft IEP, and that Defendant was prepared to "fine tune" the IEP,

effectively declaring Plaintiffs intent not to meaningfully engage in the IEP process.  The ALJ

held that Plaintiffs intended to withdraw from the development of an IEP when, on August 21,

2002, they again entered into an Enrollment Agreement with Barnstable, binding Plaintiffs to the cost of S.G.'s tuition at Barnstable as of August 1, 2002.  As such, the ALJ held, Plaintiffs failed to meaningfully engage in the IEP process, and that Defendant did in fact offer S.G. a free appropriate public education.

Based on the record submitted by the parties, and using the applicable standard of review whereby the Court must make its own findings and give due weight to the findings of the ALJ (see Shore Reg'l Hight Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198-99) the Court concludes that the preponderance of the evidence supports the ALJ's findings on this issue.  Here, the record shows that the parents were unwilling to give Defendant a realistic opportunity to provide S.G. with a free appropriate public education ("FAPE") as they had failed to continue to negotiate with Defendant in good faith and instead registered and sent S.G. to Barnstable.  Further, the July 30, 2002 correspondence, on its face, reads as a rejection of Defendants draft IEP and a notification of Plaintiffs' intention to seek reimbursement of the tuition costs they were to incur by sending S.G. to Barnstable, going so far as to cite N.J.A.C. 6A:14-2.10, the New Jersey administrative code that provides for reimbursement of private schooling.  See N.J.A.C. 6A:14-2.10(c) (allowing an ALJ to deny or reduce reimbursement for the costs of a unilateral placement based on the parents' unreasonable behavior).

Of course, such reimbursement is precluded if Defendant had made available a free, appropriate public education for S.G.  See N.J.A.C. 6A:14-2.10(a).  Here, Defendant provided a draft IEP which stated, in relevant part: that S.G. satisfied the requirements for specific learning disability classification; the academic goals for S.G.; and the methods in which Defendant intended to reach those goals, including feedback, praise, identification of strengths and weaknesses, supplemental materials, additional time for assignment completion, a HSPA writing

coach, and evaluations based upon self-comparison not competition.  The presentation of the

draft IEP was accompanied by a letter which stated, in part, that: " . . . we should consider this

[IEP] a 'draft' that requires some fine tuning before the final document is produced . . . [w]e look

forward to working with you and [S.G.] and are confident that we will provide an appropriate

high school education for him."

The draft IEP presented by Defendants appears thorough and comprehensive, addressing

not only S.G.'s deficiencies, but also how to address those deficiencies.  The Court therefore

finds, by the preponderance of the evidence, that the draft IEP proposed by Defendants to

Plaintiffs would have provided an "appropriate public education" by conferring significant

learning resulting in a "meaningful benefit" for S.G.  See Ridgewood Bd. of Educ. v. N.E. ex rel.

M.E., 172 F.3d 238, 247 (3d Cir. 1999).

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint under Rule

12(b)(6) is granted and Plaintiffs' cross-motion for summary judgment is denied.


s/Garrett E. Brown, Jr.
**GARRETT E. BROWN, JR**
**CHIEF UNITED STATES DISTRICT JUDGE**


Dated: January 22, 2007